Case 2:20-cv-00191   Document 151   Filed on 12/07/24 in TXSD   Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
December 09, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RONALD ELIZONDO, SR., and MARIA ELIZONDO, individually and as the lawful heirs of the Estate of Ronald Elizondo, Jr., | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 2:20-CV-00191 |
| DONALD HINOTE, | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

At 1:26 a.m. on July 10, 2019, Defendant Donald Hinote's home security system alerted to movement in front of his house. Hinote was a trooper with the Texas Department of Public Safety and was off duty at the time. He grabbed a pistol and went outside, where he saw Ronald "Nano" Elizondo, Jr. inside a vehicle owned by a third party parked on the street. Hinote believed that Elizondo was committing a crime, so he quickly and quietly approached him. Hinote shouted, "Hey, get out of there!" In response, Elizondo ran away from the vehicle in the only direction available to him—toward Hinote. Hinote shot at him at least four times, and Elizondo died from those injuries. He was seventeen. His parents—Ronald Elizondo, Sr. and Maria Elizondo—filed this lawsuit as a result.[1]

---

[1] Because three relevant individuals share the same last name in this case, for clarity, the Court refers to Ronald Elizondo, Jr. as "Elizondo" and his parents, Ronald Elizondo, Sr. and Maria Elizondo, as "Plaintiffs."

Pending before the Court is Defendant Donald Hinote's Motion for Summary Judgment. (Dkt. No. 139). For the reasons set forth below, the Court **GRANTS** the Motion.

## I.     BACKGROUND[2]

At 12:45 a.m. on July 10, 2019, Hinote completed his shift as a Highway Patrol Trooper for the Texas Department of Public Safety ("DPS") and went home. (Dkt. No. 141-3 at 10). He changed out of his uniform into some gym shorts and fell asleep in front of the television. (*Id.* at 12–13). A little before 1:30 a.m., Hinote's home security system woke him with an alert of movement in his front yard. (*Id.* at 13). Hinote checked the security system video feed on his phone and saw that the lights were on in his truck.[3] (*Id.*). Hinote knew that he had not been in his truck earlier that evening, so he was concerned. (*Id.* at 14). He grabbed his concealed-carry pistol from the dresser and ran outside to investigate. (*Id.* at 14–15). Hinote verified that nobody was in his truck and then saw that the lights were on in the car on the street at the end of his driveway. (*Id.* at 15–16). The car belonged to Hinote's neighbor. (*Id.* at 11, 38). And although Hinote could not identify him at the time, the individual inside the car was Elizondo. (*Id.* at 11, 18, 38).

---

[2]     Except where noted, this section contains only undisputed facts, and all facts and reasonable inferences have been construed in favor of the nonmovant. *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020). The Court has not weighed evidence or made credibility findings. *Id.*

[3]     Although not known to Hinote at the time, his security system video shows that the lights were on in his truck because Elizondo opened the driver's-side door and rifled around the front seat area of the car, (Dkt. No. 140-B-1 at 00:00–00:17), before exiting the truck, closing the door, and doing the same with the car parked on the street at the end of Hinote's driveway, (Dkt. No. 140-B-2 at 00:00–00:17).

Hinote ran down his driveway and stopped at the back driver's side of the car. (Dkt. No. 140-B-3 at 00:00–00:06). He saw a person in sweatpants and a hoodie rummaging inside with his knees on the front seat and upper body in the back seat. (Dkt. No. 141-3 at 19). Hinote drew his pistol and called, "Hey, get out of there!" (Dkt. No. 140-B-3 at 00:06; (Dkt. No. 141-3 at 19). Caught by surprise, Elizondo came darting out of the driver's seat and attempted to run from the car. (Dkt. No. 140-B-3 at 00:06–00:07). In doing so, he ran directly at Hinote who saw an object in Elizondo's hand and fired several shots, immediately incapacitating Elizondo. (*Id.* at 00:08); (Dkt. No. 141-3 at 19, 21–22). Elizondo dropped the flashlight he was holding and fell on the street. (Dkt. No. 140-B-3 at 00:09–00:12); (Dkt. No. 141-3 at 19, 21–22, 39). Hinote checked Elizondo for weapons and took a hatchet off him before running inside his house to retrieve his cell phone. (Dkt. No. 140-B-4 at 00:00–00:16); (Dkt. No. 141-3 at 18–20). Hinote returned to the driveway and called 9-1-1 to report the shooting and to watch over Elizondo. (Dkt. No. 140-B-5 at 00:00–1:33); (Dkt. No. 141-3 at 20, 24–25). After speaking with the emergency dispatcher, Hinote ran back inside his house to grab his emergency first aid kit. (Dkt. No. 140-B-6 at 00:00–00:19); (Dkt. No. 141-3 at 25). Hinote quickly returned to administer first aid until Corpus Christi Police and paramedics arrived. (Dkt. No. 140-B-7 at 00:00–00:16); (Dkt. No. 141-3 at 25, 28). Despite Hinote's efforts, Elizondo died from the gunshots. (Dkt. 139-1 at 6) (Dkt. No. 139-1 at 20–21); (*see* Dkt. No. 141-3 at 27); (Dkt. No. 18 at 2).

Plaintiffs sued Hinote under 42 U.S.C. § 1983 for violating Elizondo's Fourth Amendment rights. (Dkt. No. 78 at 29–31). Hinote moved for summary judgment

3

asserting that he is entitled to qualified immunity. (Dkt. No. 139). Plaintiffs have responded. (Dkt. No. 141).

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the suit's outcome under governing law. *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). And "[a] dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *TIG Ins. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the record evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The nonmovant must "'go beyond the pleadings and by [the nonmovant's] own

4

affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice Designs, LLC v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553). "The nonmovant must 'identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim.'" *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)), *as revised* (July 14, 2017). If evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citing *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511).

In reviewing a motion for summary judgment, the district court views the evidence in the light most favorable to the nonmovant. *Carr*, 866 F.3d at 601. This means that courts must resolve factual controversies in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

## III. QUALIFIED IMMUNITY STANDARD

Qualified immunity protects government officials from civil liability to the extent that their conduct is objectively reasonable in light of clearly established law. *Crostley v. Lamar Cnty.*, 717 F.3d 410, 422 (5th Cir. 2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). The doctrine provides government officials "'breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Davidson v. City of Stafford*,

5

848 F.3d 384, 391 (5th Cir. 2017) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546, 132 S.Ct. 1235, 1244, 182 L.Ed.2d 47 (2012)).

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id*.

To overcome a qualified-immunity defense, a plaintiff must show that (1) the official violated a statutory or constitutional right and (2) the right was so "clearly established" at the time of the challenged conduct that a reasonable officer would be on notice that their conduct was against the law. *Ramirez v. Killian*, 113 F.4th 415, 421 (5th Cir. 2024) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011)); *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002) ("Officers sued in a civil action for damages under 42 U.S.C. § 1983 have the same right to fair notice as do defendants charged with the criminal offense defined in 18 U.S.C. § 242."); *see also Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

A plaintiff cannot establish these two prongs at the summary-judgment stage "with conclusory allegations or unsubstantiated assertions of wrongdoing." *Burke v. Masters*, 4:23-CV-00361, 2024 WL 1703085, at *7 (S.D. Tex. Apr. 14, 2024) (first citing *Mitchell v. Mills*, 895 F.3d 365, 370 (5th Cir. 2018); and then citing *Williams-Boldware v. Denton Cnty.*, 741 F.3d 635, 643–44 (5th Cir. 2014)). Instead, a plaintiff "must point to

specific evidence in the record demonstrating a material fact issue concerning each element of his claim." *Mitchell*, 895 F.3d at 370.

And if a video recording is provided, courts should also "'assign greater weight, even at the summary judgment stage, to the . . . video recording[s] taken at the scene.'" *Baker v. Coburn*, 68 F.4th 240, 244 (5th Cir. 2023) (alteration in original) (quoting *Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022)), *as revised* (May 19, 2023). If "the video 'blatantly contradict[s]' either party's account," courts "'view[] the facts in the light depicted by the videotape.'" *Macias v. Watkins*, No. 23-40580, 2024 WL 3427047, at *2 (5th Cir. July 16, 2024) (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380–81, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007)). Otherwise, courts draw all inferences in the plaintiff's favor. *Id.* (citing *Brown*, 623 F.3d at 253).

## IV. DISCUSSION

Plaintiffs allege that Hinote violated Elizondo's Fourth Amendment right against unreasonable seizure when he shot and killed Elizondo without adequate warning or a reasonable basis. (Dkt. No. 141 at 1–2). Hinote moves for summary judgment, asserting that he is entitled to qualified immunity.[4] (Dkt. No. 139 at 6–8).

---

[4] "[W]hether an officer is acting under color of state law does not depend on his on- or off-duty status at the time of the alleged violation." *Tyson v. Sabine*, 42 F.4th 508, 522 (5th Cir. 2022) (quoting *Bustos v. Martini Club Inc.*, 599 F.3d 458, 464 (5th Cir. 2010). An off-duty officer may assert a qualified immunity defense because, "in Texas, 'a police officer's "off-duty" status is not a limitation upon the discharge of police authority in the presence of criminal activity.'" *Defrates v. Podany*, 789 F.App'x 427, 431 n.2 (5th Cir. 2019) (quoting *Laughlin v. Olszewski*, 102 F.3d 190, 192 n.1 (5th Cir. 1996)).

### A.   FOURTH AMENDMENT VIOLATION

Plaintiffs argue that Hinote used excessive force when he shot and killed Elizondo. (Dkt. No. 141 at 1–2). The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. A seizure can be unreasonable if it involves excessive force. *See Graham v. Connor*, 490 U.S. 386, 394–95, 109 S.Ct. 1865, 1870–71, 104 L.Ed.2d 443 (1989). To prevail on an excessive-force claim under the Fourth Amendment, a plaintiff must show that he suffered (1) an injury that (2) resulted directly and only from an officer's use of force that was "clearly excessive" and (3) "objectively unreasonable." *Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022) (first quoting *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020); and then citing *Graham*, 490 U.S. at 395–97, 109 S.Ct. at 1871–72). It is undisputed that Elizondo suffered an injury. (*See* Dkt. No. 139-1 at 1–8); (Dkt. No. 141-1). Thus, the Court must assess whether Hinote's use of force was "clearly excessive" and "objectively unreasonable."

### 1.   Clearly Excessive

Three factors inform whether a use of force was excessive in the Fourth Amendment context: (1) the severity of the crime committed; (2) whether the suspect posed an immediate threat to the safety of officers or others; and (3) whether the suspect was resisting arrest or attempting to evade arrest by flight. *See Graham*, 490 U.S. at 396, 109 S.Ct. at 1872. Excessive-force claims are "evaluated for objective reasonableness based on the information the officers had when the conduct occurred." *Saucier v. Katz*, 533 U.S. 194, 207, 121 S.Ct. 2151, 2159, 150 L.Ed.2d 272 (2001). This calculus must include

"allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97, 109 S.Ct. at 1872; *see also Plumhoff v. Rickard*, 572 U.S. 765, 775, 134 S.Ct. 2012, 2020, 188 L.Ed.2d 1056 (2014).

Plaintiffs contend that all three factors support a finding that Hinote used excessive force. (Dkt. No. 141 at 9). They argue that (1) the crime's severity was low because Elizondo was committing a nonviolent burglary; (2) Elizondo posed no immediate threat to Hinote or others; and (3) Elizondo was not resisting arrest but complying with Hinote's command, despite not knowing he was an officer. (*Id.*).

The Court disagrees. In particular, the second factor—whether Elizondo posed an immediate threat to Hinote—favors a finding that Hinote acted reasonably.

### a. Severity of the Crime Committed

Plaintiffs are correct that automobile burglary is not an inherently violent crime. *See, e.g.*, *Tennessee v. Garner*, 471 U.S. 1, 21, 105 S.Ct. 1694, 1706, 85 L.Ed.2d 1 (1985) ("The FBI classifies burglary as a 'property' rather than a 'violent' crime."). Even so, automobile burglaries can, and often do, become violent when an offender is confronted. *See, e.g.*, *Lopez-Elias v. Reno*, 209 F.3d 788, 792 (5th Cir. 2000) (reiterating that automobile burglaries may be categorized as a crime of violence in the immigration context). At the time of the incident here, Hinote did not know whether Elizondo was armed. This factor is neutral.

b.  Immediate Threat to Safety

Turning to the second factor, Plaintiffs make two arguments as to why Hinote's belief that he was in imminent danger was unreasonable.

First, Plaintiffs attack the reasonableness of Hinote's belief that the object in Elizondo's hand was a weapon. (Dkt. No. 141 at 12–14). They argue it was obvious through the car's window that Elizondo was just holding a flashlight. (*Id.* at 3, 5, 12–14). The Court disagrees. A flashlight can be attached to a firearm or other weapon. *See, e.g., Macias v. Watkins*, 696 F.Supp.3d 283, 290–91 (S.D. Tex. 2023) (officer perceived an object in suspect's hand "to be a pistol with a gun mounted flashlight"), *aff'd*, No. 23-40580, 2024 WL 3427047 (5th Cir. July 16, 2024). And even assuming Hinote saw that the object was a flashlight, that does not mean Hinote did not perceive it to be a possible weapon. *See, e.g., United States v. LeMoure*, 474 F.3d 37, 45 (1st Cir. 2007) (flashlight was a dangerous weapon); *United States v. Couch*, 59 F.3d 171 (6th Cir. 1995) (same); *see also Thompson v. Hammond City*, No. 2:18-CV-10658, 2019 WL 7291060, at *9 (E.D. La. Dec. 30, 2019) (same), *aff'd*, No. 20-30056, 2023 WL 155412 (5th Cir. Jan. 11, 2023); *United States v. Frazier*, No. 1:12-CR-01572, 2013 WL 499245, at *7 (D.N.M. Feb. 4, 2013) (same); *Malden v. City of Waukegan*, 1:04-CV-0282, 2009 WL 2905594, at *4 (N.D. Ill. Sept. 10, 2009) (defendant was armed with a dangerous weapon, a large flashlight); *see also United States v. Daulton*, 488 F.2d 524, 524–25 (5th Cir. 1973) (listing various everyday objects that courts have found to be weapons under certain circumstances); *Fall v. Esso Standard Oil Co.*, 297 F.2d 411, 414 (5th Cir. 1961) ("A useful tool may be a dangerous weapon."); *Green v. City of Mission,* No. 7:18-CV-00049, 2019 WL 3217033, at *23 (S.D. Tex. July 17, 2019) ("Courts have found

10

officers were justified in utilizing deadly force when they reasonably believed an object could have been a deadly weapon, even if the object, in fact, did not pose a risk of harm."), *aff'd sub nom. Green v. Lara,* 811 F.App'x 888 (5th Cir. 2020).

Second, Plaintiffs question Hinote's testimony that he believed Elizondo was likely armed because, in his experience, "criminals doing illegal activities are armed in Corpus [Christi]." (Dkt. No. 141 at 11); (Dkt. No. 141-3 at 53). Plaintiffs point to Hinote's lack of automobile-burglary experience and emphasize that this makes his assertion that Elizondo was armed unreasonable. (*Id.* at 11–12). Whether Hinote expected Elizondo to be armed, the facts supported Hinote's reasonable belief that Elizondo was armed. In the dark, from only a few feet away, Elizondo ran toward Hinote with an object in his hands that could have been used as a weapon. (Dkt. No. 140-B-3 at 00:05–00:08). Under these circumstances, Hinote's perception that he was in immediate danger was reasonable.

In a similar case, the Fifth Circuit held that an officer acted reasonably when he shot a suspect "charging almost directly toward him in the dark from less than a car's length away." *Guerra v. Bellino*, 703 F.App'x 312, 317 (2017). There, the officer "was forced to make a split-second decision based on [the suspect's] conduct without knowledge of his subjective intent." *Id.* A determination "in hindsight that [the suspect] posed no threat . . . is of no consequence to the analysis." *Id.* So too here. Elizondo ran directly toward Hinote from less than a car's length away in the dark. (Dkt. No. 140-B-3 at 00:05–00:08). Although Hinote did not know at the time whether Elizondo was armed, from such a close distance, Elizondo could have used any heavy or sharp object as a weapon. Hinote knew nothing about Elizondo's intent when he ran directly at him, and Hinote

11

had less than three seconds to determine whether he was in danger. Although the outcome is tragic, Hinote's determination that he was in immediate danger was reasonable.

### c. Resisting or Evading Arrest

Finally, as to the third factor, Plaintiffs are correct that Elizondo was not attempting to resist or evade arrest. Elizondo was unaware that he was dealing with law enforcement, let alone that Hinote might try to detain him. It is also true that Elizondo may have been complying with Hinote's order to get out of the vehicle. But Elizondo's "cooperation prior to the point at which he charged at [Hinote] is immaterial" in determining whether the officer used a reasonable amount of force. *Guerra*, 703 F.App'x at 317. Elizondo may not have been evading arrest, but he was attempting to flee the scene. Given that Elizondo was not under arrest, this factor is not squarely relevant; but as applied to these facts, it does not weigh in favor of Elizondo.

\* \* \*

Accordingly, under the *Graham* framework, the first and third factors do not conclusively determine whether Hinote's use of force was reasonable, but the second factor clearly shows that it was.

### 2. Objectively Unreasonable

Apart from the *Graham* factors, Plaintiffs also argue that the amount of force that Hinote used was unreasonable because Hinote failed to identify himself or provide a warning before he shot Elizondo. (Dkt. No. 141 at 9–10). The Court disagrees.

Plaintiffs' contention that officers must give a warning before firing on a suspect comes from *Tennessee v. Garner*. In *Garner*, a police officer fatally shot an unarmed individual fleeing from a burglary. 471 U.S. at 3–4, 105 S.Ct. at 1697–98. The Court found that the officer "could not reasonably have believed that [the suspect] — young, slight, and unarmed — posed any threat." *Id.* at 21, 105 S.Ct. at 1706. The Court stated that "[a] police officer may not seize an unarmed, nondangerous suspect by shooting him dead." *Id.* at 11, 105 S.Ct. at 1701. And "where feasible, some warning [must] be[] given" even if the suspect poses a threat of serious physical harm such that deadly force may be used. *Id.* at 12, 105 S.Ct. 1701.

The Court does not agree that *Garner's* warning requirement or its facts lead to a conclusion that Hinote acted unreasonably. *Garner* is materially distinguishable from this case. Most notably, in *Garner*, the suspect was running *away* from the officer, so the fact that the suspect had committed a nonviolent offense, was unarmed, and was running away from the officer led the Court to conclude that the officer did not have justification to shoot. *Id.* at 3–5, S.Ct. at 1697–98. Here, Elizondo ran *toward* Hinote, which materially changed the calculus about whether the "young, slight, and [possibly] unarmed" individual posed any threat. *See id.* at 21, 105 S.Ct. at 1706. *Garner* is also clear that a warning should be given "where feasible." *Id.* at 11–12, 105 S.Ct. at 1701. The entire interaction between Hinote announcing his presence and Elizondo running toward Hinote took place in less than three seconds. (Dkt. No. 140-B-3 at 00:05–00:08). It was not feasible for Hinote to see Elizondo running toward him, issue a warning, evaluate Elizondo's response, and then decide whether to fire his weapon. If Elizondo intended

13

to harm Hinote, he could have done so during the time it would have taken for Hinote to warn that he was law enforcement. Hinote had less than three seconds to assess the situation and act, leaving insufficient time for a warning. Therefore, Hinote did not violate *Garner's* warning requirement.

In sum, the video evidence demonstrates that Hinote's use of force was neither excessive nor unreasonable in light of the facts before Hinote at the time. Therefore, he is entitled to qualified immunity because Plaintiffs failed to prove the first qualified-immunity prong—i.e., that Hinote violated Elizondo's Fourth Amendment rights.

### B.   CLEARLY ESTABLISHED LAW

The second prong of the qualified immunity inquiry is whether the officer violated "clearly established" law. *Brewer v. Hayne*, 860 F.3d 819, 823 (5th Cir. 2017). "The 'clearly established' prong is difficult to satisfy." *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020). A right is "clearly established" if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (per curiam)). This standard is met only if "'the state of the law at the time of the incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional.'" *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (alteration in original) (quoting *Tolan*, 572 U.S. at 656, 134 S.Ct. at 1866). Consequently, to establish that a constitutional right was "clearly established," a plaintiff must identify precedent that "'squarely govern[s]' the specific facts at issue." *Bartlett*, 981 F.3d at 337 (quoting *Mullenix*, 577 U.S. at 15, 136 S.Ct. at 310). Courts must ask "whether the violative

14

nature of *particular* conduct is clearly established." *Mullenix*, 577 U.S. at 12, 136 S.Ct. at 308 (emphasis in original) (quoting *Ashcroft*, 563 U.S. at 742, 131 S.Ct. at 2084). This constitutional question must be framed "'with specificity and granularity.'" *Cunningham*, 983 F.3d at 193 (quoting *Morrow v. Meachum*, 917 F.3d 870, 874–75 (5th Cir. 2019)). In other words, a plaintiff generally must "'identify a case in which an officer acting under similar circumstances was held to have violated the Constitution' and explain 'why the case clearly proscribed the conduct of that individual officer.'" *Cope*, 3 F.4th at 205 (cleaned up) (quoting *Bartlett*, 981 F.3d at 345). "While an exact case on point is not required," the specifics of the officers' violation must be "'beyond debate.'" *Id*. (quoting *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020)). Specifically, "'the right's contours [must be] sufficiently definite that any reasonable official in the officer's shoes would have understood that he was violating it.'" *Baker*, 68 F.4th at 245–46 (cleaned up) (quoting *Plumhoff*, 572 U.S. at 779, 134 S.Ct. at 2023). Broad, general propositions of law are not enough. *Cope*, 3 F.4th at 205; *Ashcroft*, 563 U.S. at 742, 131 S.Ct. at 2084 ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality."). Put simply, "'[T]he law must be *so* clearly established that—in the blink of an eye, in the middle of a high-speed chase—every reasonable officer would know it immediately.'" *Martin v. Petty*, 699 F.Supp.3d 547, 556 (S.D. Tex. 2023) (emphasis and alternation in original) (quoting *Morrow*, 917 F.3d at 876).

Plaintiffs do not appear to argue that Hinote violated clearly established law. Plaintiffs argue that the inquiries into whether Hinote violated the Fourth Amendment and whether Hinote "clearly" violated the Fourth Amendment are essentially one and

15

the same, as both hinge on whether the force used was "clearly excessive." (Dkt. No. 141 at 8) (citing *Darden v. City of Fort Worth*, 880 F.3d 722, 728 (5th Cir. 2018) ("Our precedents recognize that inquiries regarding whether a use of force was 'clearly excessive' or 'clearly unreasonable…are often intertwined,' and we consider those questions together.")). Plaintiffs emphasize that courts often assess these factors together, treating "clearly excessive" force as indicative of a "clearly unreasonable" use of force, thus violating the Fourth Amendment. Plaintiffs assert that by alleging that Hinote's use of force was "clearly excessive," they have inherently argued that Hinote "clearly" violated the Fourth Amendment. (*Id*. at 8–14).

Because the Court finds Hinote's use of force was not clearly excessive, the Court finds that Hinote did not "clearly" violate the Fourth Amendment. And to the extent that their arguments about Hinote's failure to warn and his belief that Elizondo posed an immediate threat were intended to be assertions that Hinote violated clearly established law, the Court disagrees, as explained in its analysis above. *See supra* Section IV.A. Hinote's failure to warn did not violate *Garner* because it was not feasible for him to issue a warning at the time the situation escalated. *Id*. at IV.A.2. And although officers may not assume that an individual poses a threat just because he possesses a weapon, *see, e.g.*, *Cole v. Carson*, 935 F.3d 444, 446–47 (5th Cir. 2019) (en banc) (qualified immunity denied to officers who shot a suspect holding a gun but not threatening officers), the reasonableness of Hinote's belief that Elizondo posed an immediate threat was based on Elizondo running straight toward Hinote in the dark with an object in his hand, not

merely the presence of a possible weapon. *See id.* at IV.A.1.b. Therefore, Hinote did not violate clearly established law.

## V. CONCLUSION

Considering the above analysis, Defendant Donald Hinote's Motion for Summary Judgment, (Dkt. No. 139), is **GRANTED**. Because Hinote is entitled to qualified immunity, Plaintiffs' claims against him fail as a matter of law.

It is SO ORDERED.

Signed on December 7, 2024.

_____
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**